UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                              DECISION AND ORDER

vs.                                         16-CR-6132-CJS-MWP-1
                                              22-CV-6418 CJS

JOSE GONZALEZ,
                            Defendant.
_____

## INTRODUCTION

Now before the Court is a motion (ECF No. 169) by Jose Gonzalez ("Gonzalez" or "Defendant") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons discussed below, the application is denied.

## BACKGROUND

The reader is presumed to be familiar with the history of this action. Briefly, Defendant Gonzalez, along with his co-defendant Juan Sampel ("Sampel"), was convicted following their joint trial in October 2018, when a jury found each defendant guilty of one count of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The Court later sentenced Gonzalez, who had previously been convicted of Criminal Possession of a Controlled Substance in the First Degree, in violation of New York Penal Law § 220.21, primarily to 262 months' imprisonment. Defendant was represented at trial by attorney Mehmet Okay ("Okay"). Defendant insisted upon going to trial after turning down a plea offer to a 10-year sentence that Okay had negotiated, despite having been cautioned by

1

the Court that he faced a 20-year mandatory minimum sentence if convicted. ECF No. 150 at pp. 4-5.

Okay also represented Defendant on appeal to the Second Circuit, arguing that the evidence at trial had been insufficient to support Defendant's conviction, since the Government's primary witness, co-conspirator Angel Ocasio ("Ocasio"), was generally not credible.   In his appellate brief, Okay summarized the evidence introduced at trial against Defendant, in pertinent part, as follows:

> In 2015 a joint task force involving the Drug Enforcement Administration (DEA) and the Rochester Police Department (RPD) commenced an investigation into the movement of kilogram quantities of cocaine in the Western District of New York. Between January and April in 2016 a series of federal wire intercept orders were entered that led to electronic eavesdropping on six (6) target telephones, three (3) of which were utilized by co-defendant Angel Ocasio.  One of the target telephones was utilized by Juan Sampel, who had a link to the Farmers Insurance Company, an insurance agency on Lyell Avenue in Rochester.

> Confidential sources were also utilized by law enforcement as part of the narcotics investigation. According to two of them (CS-1 and CS-2), an individual named Dennis Smith was observed moving kilogram quantities of cocaine in the Western District of New York. CS-1 reported that Smith had identified his source of supply as a "Spanish" male who owns a "Farmers Insurance Company". The involvement of the appellant in the unlawful agreement was related primarily to his interactions with Angel Ocasio, who appears to have been the mastermind of the narcotics conspiracy. Ocasio dealt with both the appellant and Juan Sampel.

> During a 27 March 2016 execution of an arrest warrant and a search warrant at the home of the appellant at 146 Milford Street, Apartment 6, in Rochester, New York, law enforcement recovered three (3) cellular telephones. Analysis of service provider records for the seized instruments revealed 307 communications between the appellant and Ocasio in March and April of 2016.

> During the execution of the Milford Street search warrant, law enforcement

also collected $11,678 in United States Currency, two (2) other cellular telephones, two (2) digital scales, [and] one (1) marijuana grinder[.]

Pole camera surveillance was established near the residence of Ocasio in March and April of 2016, and a number of arrivals and departures by individuals in automobiles were observed on various dates and times during that period.

***

Ocasio testified that he first met the appellant in 2004. In September of 2015 Ocasio claimed he started to sell cocaine to the appellant. During holiday periods Ocasio claimed that the appellant would sometimes sell him cocaine. Ocasio stated that he obtained kilograms of cocaine from Puerto Rico sent through the United States Postal Service (USPS) to rural post office box addresses in the Western District of New York that were supplied to him by co-defendant Jason Gibson. Ocasio testified that he received more than 100 kilograms of cocaine in metal auto parts boxes sent from Puerto Rico through the United States Mail. A-1189 and 1191.

During the course of his testimony Ocasio was asked to explain a number of intercepted telephone calls and texts he was a party to that had been translated and transcribed from Spanish into English. Some of the telephone calls and texts were communications Ocasio had with the appellant.

Appellate Brief at pp. 9-11.

The Second Circuit Panel rejected Okay's sufficiency-of-the-evidence argument and affirmed Defendant's conviction. *See*, Second Circuit's Summary Order at 6 ("Because Gonzalez fails to establish that Ocasio's testimony implicating Gonzalez was incredible on its face, we conclude that his sufficiency challenge fails.").

Defendant, proceeding *pro se*, then filed the subject Section 2255 motion (ECF No. 169), alleging that Okay provided ineffective assistance of counsel, both at trial and on appeal, in violation of Defendant's Sixth Amendment rights. As discussed more fully below, Defendant maintains that Okay was ineffective for the following reasons: 1) Okay failed, at trial, to impeach a prosecution witness with his prior inconsistent testimony, and

3

then, on appeal, failed to argue that the verdict should be set aside due to the witness's perjury; 2) Okay failed to oppose the Government's motion to consolidate Defendant's and Sampel's trials; 3) Okay failed "to present evidence regarding [an] incorrect [sentencing] enhancement"; 4) Okay failed to communicate with Defendant concerning the appeal; and 5) Okay failed to request oral argument before the Second Circuit.

The Government opposes the application, maintaining that some of the claims are procedurally barred, since they could have been raised on direct appeal, and that all of the claims lack merit. ECF No. 175.  For example, the Government indicates that Defendant has not made any sufficient showing of prejudice, considering the strength of the Government's case at trial. *See, e.g.*, ECF No. 175 at p. 11 ("The Government's proof involved a cooperating witness, Angel Ocasio, who testified at length about his direct involvement in supply more than 5 kilograms of cocaine to Gonzalez in support of his drug trafficking activities.   Ocasio's testimony was, in large part, corroborated by surveillance camera footage which captured Gonzalez; intercepted text messages ang phone calls between Gonzalez and Ocasio; as well as drug proceeds and drug trafficking materials seized at Gonzalez's apartment."); *see also, id*. at 12 ("In a series of transactions that occurred within the week prior to the arrests in this case, Ocasio obtained seven kilograms of cocaine from Gonzalez over two days."); 13 ("Five cellular phones were also recovered from Gonzalez's residence, including three phones that were intercepted over the wiretap of Ocasio's phones.").

The Court has now considered the parties' submissions, including Defendant's reply, and the entire record.

ANALYSIS

Defendant's *Pro Se* Status

Since Defendant is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Section 2255 Principles

Defendant's motion is brought pursuant to 28 U.S.C. § 2255, which provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

An Evidentiary Hearing is Not Required

The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b). Here, the Court finds that a full evidentiary hearing is not required because there are no material factual disputes and the record conclusively shows that Defendant is not entitled to relief. To the extent Defendant insists that there are issues

of fact, they involve statements by him that are not credible since they are contradicted

by the record, as discussed below.

<u>Ineffective Assistance of Counsel</u>

Defendant alleges that he was denied his Sixth Amendment right to effective

assistance of counsel, and the legal standards applicable to such claims are well-settled.

> To succeed on a claim of ineffective assistance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Rodriguez v. United States*, 767 F. App'x 160, 163 (2d Cir. 2019); *see also*, *Marston v.*

*United States*, No. 17-CR-298 (JGK), 2020 WL 6701014, at *3 (S.D.N.Y. Nov. 13, 2020)

("[A] petitioner must show both that (1) his counsel's performance was deficient in that it

was objectively unreasonable under professional standards prevailing at the time, and

that (2) counsel's deficient performance was prejudicial to the petitioner's case.").

> Under the first prong of the *Strickland test*, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. There is a "strong presumption" that defense counsel's conduct falls within the broad spectrum of reasonable professional assistance, and a petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

> In order for a defendant to prove prejudice under the second prong of the *Strickland* test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 693-94.

*Marston v. United States*, 2020 WL 6701014, at *3.

As indicated above, the analysis under the first *Strickland* prong is deferential to

counsel, such that

> "[a]ctions or omissions by counsel that might be considered sound trial
> strategy do not constitute ineffective assistance." *Mason v. Scully*, 16 F.3d
> 38, 42 (2d Cir.1994) (citation and internal quotation marks omitted).
> Moreover, when reviewing decisions by counsel, we are instructed not to
> "second-guess reasonable professional judgments and impose on ...
> counsel a duty to raise every 'colorable' claim." *Jones v. Barnes*, 463 U.S.
> 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

*Acevedo v. Capra*, 600 F. App'x 801, 803 (2d Cir. 2015); *see also, Carmichael v.*

*Chappius*, 811 F. App'x 41, 43 (2d Cir. 2020) ("A court must make allowances for

counsel's strategic choices and apply 'a heavy measure of deference to counsel's

judgments.'" [*Strickland*, 466 U.S.] at 691, 104 S.Ct. 2052.").

Moreover, the showing under the second *Strickland* prong must be substantial,

taking into consideration the strength of the prosecution's case:

> To establish *Strickland* prejudice, [the defendant] must demonstrate "that
> there is a reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine confidence in the
> outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. That is, [the
> defendant] must show that he was "deprive[d] ... of a fair trial, a trial whose
> result is reliable." *Id*. at 687, 104 S.Ct. 2052; *see also [Harrington v.] Richter*,
> 562 U.S. [86,] 111, 131 S.Ct. 770 [(2011)] ("*Strickland* asks whether it is
> 'reasonably likely' the result would have been different." (quoting *Strickland*,
> 466 U.S. at 696, 104 S.Ct. 2052) ). "[T]he question is not whether a court
> can be certain counsel's performance had no effect on the outcome or
> whether it is possible a reasonable doubt might have been established if
> counsel acted differently"; instead, "[t]he likelihood of a different result must
> be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12, 131 S.Ct.
> 770 (emphasis added); *see also Strickland*, 466 U.S. at 693, 104 S.Ct. 2052

("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (internal citation omitted)).

The prejudice analysis should also "be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052). The prejudice inquiry is therefore ineluctably tied to the strength of the prosecution's evidence. "[A] verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than 'a verdict or conclusion only weakly supported by the record.'" *Waiters [v. Lee]*, 857 F.3d [466,] 480 [(2d Cir. 2017)] (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052).  As a result, "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001).

*Garner v. Lee*, 908 F.3d 845, 861–62 (2d Cir. 2018).

Since a defendant is required to establish both *Strickland* prongs to prevail, a court is not required to consider both prongs where it is evident that the defendant cannot meet a particular prong:

A court has flexibility in how it decides a claim of ineffective assistance. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." [*Strickland*, 466 U.S.] at 697, 104 S.Ct. 2052. Consequently, if a defendant does not successfully establish either the performance prong or the prejudice prong, the ineffective assistance claim fails, and the remaining prong becomes moot. *See id*.

*Carmichael v. Chappius*, 811 F. App'x at 43–44.

In the instant case, for the reasons explained below Defendant has not made a sufficient showing on either of the *Strickland* prongs.

<u>Counsel's Failure to Impeach Investigator Pearce</u>

Defendant devotes the bulk of his Section 2255 motion to arguing that Okay was ineffective for failing to impeach a police investigator about his allegedly false testimony concerning the location used to monitor wiretaps in this case.  On this point, Defendant contends that Rochester Police Department ("RPD") Investigator Timothy Pearce ("Pearce"), a member of the Greater Rochester Area Narcotics Enforcement Team ("GRANET"), a task force made up of federal and local officers, testified falsely concerning the physical location where investigators in this case had monitored intercepted wiretaps.  In that regard, Pearce testified, in pertinent part, that he and two Special Agents with the U.S. Drug Enforcement Administration ("DEA") conducted a wiretap investigation targeting Defendant, Sampel, and Ocasio, that had been authorized by warrants issued by this Court.  Notably, the warrant indicated that the wiretap investigation would be conducted under the supervision of the DEA.   At trial, Pearce testified that investigators monitored the wiretaps from the "wire room" in the DEA office located in the Federal Building in Rochester, and that he was not aware of any different location for doing so. Trial Transcript Vol. II at pp. 93, Vol. III at 330.

However, Defendant contends that Pearce's testimony on this point was false, since in a different trial, involving an unrelated investigation and defendant ("the Montague case"), Pearce was asked if he knew of "a particular area where GRANET or the RPD runs its wiretaps out of," and he answered, "We run that out of the [Monroe County] Public Safety Building on Exchange Boulevard." ECF No. 169, Exhibit A. Defendant therefore maintains that Pearce's testimony in this case was false, and that Okay should have impeached Pearce with his testimony from the Montague case and also raised the issue on appeal.

9

However, the Court finds absolutely no merit to this argument. First, Defendant has not shown that Pearce testified falsely, since there is nothing inconsistent about his testimony in the two cases. That is, there is nothing inconsistent about the fact that some wiretap investigations by RPD and GRANET are monitored at the Monroe County Public Safety Building, while the wiretap investigation in this action,[1] which was specifically under the supervision of the DEA, was monitored from the DEA's office.[2] Consequently, Defendant has not shown that Okay's performance was deficient insofar as he failed to impeach Pearce on this point. Nor, in any event, does the Court find any prejudice, since an attempt by Okay to impeach Pearce on this inconsequential point[3] would not have made any difference in the outcome of the case, considering the obvious strength of the Government's case against Defendant.

<u>Counsel's Failure to Object to Consolidation of Trials</u>

Defendant next asserts that "Counsel Okay was ineffective, purportedly for failing

---

[1] On cross-examination, Okay asked Pearce, "Is there another area that you know of, is there any other place besides the room in this building where wiretaps to your knowledge and experience are monitored?," to which Pearce answered, "Yeah, as far as I know, no, there is not one in another place." Trial Transcript, Vol. III at p. 330. For Okay's question to have any relevance to this action, it had to refer to whether Pearce was aware of some other location, besides the Keating Federal Building, at which investigators had listened to wiretaps in this case. Obviously, Okay was not asking whether other police investigators in other actions had ever listened to wiretaps in other locations, since such a question would have been clearly irrelevant, and the Court would have sustained the prosecutor's relevance objection to Okay's question. *Id.*

[2] *See*, Government's Opposition, ECF No. 175 at pp. 15-16 ("Gonzalez fails to appreciate the distinctions between the wiretap utilized in the separate trial of Colin Montague that he references and the wiretaps utilized in this case. For starters, the wiretaps in the Montague case involved orders issued by a state court judge under New York state law. *See United States v. Montague*, W.D.N.Y. Case No. 14-CR-6136, ECF No. 257 at 2 (Report and Recommendation, Feldman, M.J.,, stating that "the wiretap orders at issue here were issued based on four sworn affidavits submitted to Monroe County Court Judge Victoria M. Argento…"); And in fact, those applications stated that the monitoring would occur at the RPD building. *See United States v. Montague,* W.D.N.Y. Case No. 14-CR- 6136, ECF No. 332 at, *e.g.,* Exh. 6, pg. 38 (Motion for Reconsideration, attaching wiretap applications, which state "all electronic eavesdropping will be monitored from a location within the Rochester Police Department, 185 Exchange Street, Rochester, New York".).

[3] Defendant argues that "Pearce appeared to mislead the jury as to the legality of wiretap evidence, without which their case would fail," ECF No. 169 at p. 4, but that is nonsense, as Pearce did no such thing.

to object to the Government Motion to consolidate the trials of Juan Sampel and Jose Gonzalez," and that Defendant experienced "spillover prejudice" from the evidence introduced against Sampel. ECF No. 169 at p. 12b. Plaintiff alternatively refers to this as a failure by Okay "to more vigorously argue for severance of trials." ECF No. 169 at p. 11. However, the Court finds no merit to this argument, since Okay did, in fact, move for severance prior to trial, specifically arguing that that severance was necessary to avoid "spillover prejudice." Motion *in Limine*, ECF No. 114 at pp. 6-7. Consequently, Defendant's factual premise concerning Okay's alleged deficient performance in this aspect of the case is not supported by the record. Nor, in any event, has Defendant shown that this Court's ruling denying Okay's motion for severance was erroneous, such that an appeal on that basis would have been meritorious.

> Appellate Counsel's Failure to Argue on Appeal that the Court
> Improperly Applied an Adjustment for Obstruction of Justice

Defendant next contends that Okay should have argued on appeal that the Court erred, when calculating his sentencing range under the advisory Sentencing Guidelines, by imposing a 2-level upward adjustment of his offense level for obstruction of justice. In that regard, the Court made such adjustment after finding that Defendant submitted an affidavit in support of his Supplemental Motion to Suppress, ECF No. 51, in which he falsely stated that he never possessed or utilized a telephone with the number (787) 980-8676 or (585) 305-2456. *See*, PSR at pp. 24-25. Magistrate Judge Marian Payson issued a Report and Recommendation (ECF No. 61), recommending that the Court deny Defendant's Supplemental Motion to Suppress. However, the Court later vacated the Report and Recommendation, and directed that Defendant could submit a new standing affidavit:

> Defendant Jose Gonzalez, through counsel, has moved (ECF NO. 79) to vacate the Report and Recommendation (ECF No. 61) that United States Magistrate Judge Marian W. Payson issued on October 5, 2017. With the Government's consent, and as stated on the record in open court on March 16, 2018, the Court GRANTS the application, and the previously issued Report and Recommendation (ECF No. 61) is VACATED.

ECF No. 88 at p. 1. Because of that, Defendant now argues that when the Court vacated the Report and Recommendation, it also necessarily vacated the papers that he submitted in support of the Supplemental Motion to Suppress, including the affidavit in which he falsely swore that he never possessed or utilized the subject telephones. Consequently, he contends that the Court could not have properly relied on that affidavit to impose an obstruction-of-justice enhancement, and that Okay's failure to make this argument on appeal was ineffective assistance.

However, Defendant's theory lacks merit, since the Court never vacated or struck his affidavit. Indeed, the motion that the Court granted, when it vacated the Report and Recommendation, had asked only that the Report and Recommendation itself be vacated, *see*, ECF No. 79, and that is what the Court ordered. The papers Defendant filed in support of his Supplemental Motion to Suppress were never vacated, either by order of this Court or by operation of law, and there was nothing preventing this Court from considering Defendant's false statement therein when applying the adjustment for obstruction of justice. Accordingly, Okay was not ineffective for failing to raise a meritless argument on appeal concerning this point. [4]

<u>Appellate Counsel's Failure to Obtain Defendant's Approval of Claims to be Raised on Appeal</u>

---

[4] To the extent Defendant may be arguing that Okay was ineffective for failing to challenge the upward adjustment at sentencing, the claim is meritless since Okay expressly objected to the PSR's recommendation concerning the adjustment, and argued that Defendant's false affidavit had been "vacated implicitly" when the Court vacated the Report and Recommendation. *See*, ECF No. 140 at p. 2.

Defendant further contends that Okay was ineffective on appeal, for failing to communicate with him about the appellate brief.  In that regard, Defendant asserts that if Okay had discussed the appeal with him, he would have directed Okay to raise different claims.  However, appellate counsel's failure to discuss the appellate brief with Defendant prior to filing it does not establish deficient performance. *See, e.g., Proctor v. McCarthy*, No. 19CV2988GBDJLC, 2020 WL 1149660, at *22 (S.D.N.Y. Mar. 10, 2020) ("The failure to consult with a client on appellate briefing does not, without more, amount to ineffective assistance of counsel. *See, e.g., Williams v. Comm'r, N.Y. State Dep't of Corr.*, No. 07-CV-5496 (WHP) (FM), 2011 WL 5301766, at *21 (S.D.N.Y. Oct. 31, 2011) (citing cases), adopted by 2011 WL 6182364 (Dec. 12, 2011). "Although it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that his client wishes to pursue." *McIntyre v. Duncan*, No. 03-CV-523 (ADS), 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005); *see also, e.g., Warren v. Napoli*, No. 05-CV-8438 (CM (KNF), 2009 WL 2447757, at *18 (S.D.N.Y. Aug. 10, 2009) (failure to discuss contents of appellate brief prior to filing does not warrant habeas relief on ineffective assistance of counsel claim), adopted by Dkt. No. 72 (Sept. 14, 2009). Therefore, Proctor's claim that appellate counsel failed to communicate with him does not, by itself, establish deficient performance."), report and recommendation adopted, No. 19CIV2988GBDJLC, 2023 WL 4562405 (S.D.N.Y. July 17, 2023); *see also, Henareh v. United States*, No. 114CV07145JSRSDA, 2018 WL 3468715, at *15 (S.D.N.Y. June 8, 2018) ("[T]he failure to discuss the contents of an appellate brief prior to filing does not warrant habeas relief for ineffective assistance of counsel.") (citation omitted), report and

13

recommendation adopted, No. 11-CR-93(JSR), 2018 WL 3462508 (S.D.N.Y. July 18, 2018).

Additionally, Defendant has not shown that he was prejudiced by Okay's alleged lack of communication, such as by showing that the grounds he wanted Okay to raise on appeal[5] were more meritorious than the ground Okay raised. *See, e.g., Henareh v. United States*, No. 114CV07145JSRSDA, 2018 WL 3468715, at *16 (S.D.N.Y. June 8, 2018) ("Henareh cannot show prejudice. Henareh does not explain how his appellate counsel's alleged failure to communicate with him caused prejudice on appeal. Assuming his contention is that the failure to communicate led to certain grounds being omitted from his appeal, he has not shown that any of those grounds have merit, as discussed above. Appellate counsel "need not raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success." *McIntyre*, 2005 WL 3018698, at *2. Indeed, the "process of 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Id.* at *3 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001)). For these reasons, I recommend that Henareh's claims regarding ineffective assistance of appellate counsel be denied."), report and recommendation adopted, No. 11-CR-93(JSR), 2018 WL 3462508 (S.D.N.Y. July 18, 2018).

<u>Appellate Counsel's Failure to Request Oral Argument</u>

Lastly, Defendant maintains that Okay was ineffective for failing to request oral

---

[5] Presumably, since it is the primary focus of this collateral attack, the claim that Defendant most wanted raised on appeal related to the alleged perjury by Pearce, which is completely meritless. Otherwise, Defendant refers only to issues related to the *Wade* hearing, to which the Court also finds no merit. *See*, ECF No. 169 at p. 7 (Defendant only vaguely contends that he wanted Okay to raise arguments involving "preserved *Wade* hearing claims that the Judge never ruled upon, in addition to fundamental issues pertaining to the state search warrant application."); *see also, id.* at 8 (Referring to "faulty identification procedures" and to the "state search warrant [being] riddled with conclusory claims.").

argument of the appeal before the Second Circuit.  However, the Court finds that this argument also lacks merit.  In that regard, the failure to request oral argument does not necessarily establish deficient performance, and, in any event, Defendant has not made any plausible showing of prejudice, since he has not attempted to show how oral argument in this case would have resulted in a different outcome. *See, e.g., Cox v. Ebert*, No. 06CIV.3159(PAC)(JCF), 2007 WL 2948160, at *23 (S.D.N.Y. Oct. 10, 2007) ("[T]he failure to request argument on claims that counsel had already fully briefed in his papers does not fall outside the "wide range of reasonable professional assistance" set forth in Strickland. 466 U.S. at 689."), *report and recommendation adopted*, No. 06 CIV. 3159 PAC JCF, 2010 WL 3119445 (S.D.N.Y. Aug. 5, 2010); *see also, Ture v. Racette*, No. 9:12-CV-01864-JKS, 2014 WL 2895439, at *10 (N.D.N.Y. June 26, 2014) ("Ture cannot show that counsel's decision to not partake in oral argument rendered him ineffective.") (citations omitted); *Smalls v. McGinnis*, No. 04 CIV.0301(AJP), 2004 WL 1774578, at *32 (S.D.N.Y. Aug. 10, 2004) ("Smalls' claim fails because he has not shown failure to submit a rebuttal brief and present an oral argument is deficient, nor that he has suffered prejudice as a result of counsel's conduct. He only makes the vague statement that he was denied "the all important last written word and maybe the last spoken word." (Pet. at 26.) Smalls has not demonstrated that a reply brief or oral argument would have changed the outcome of his appeal.  Accordingly, Smalls' claim regarding his lack of oral argument and rebuttal brief is denied.") (citations omitted)

In sum, Defendant has not shown, as to any of his claims of ineffectiveness, that Okay's conduct fell below prevailing professional norms or that he was prejudiced as a result.  Accordingly, his Section 2255 motion is denied.

CONCLUSION

The application under 28 U.S.C. § 2255 (ECF No. 169) is denied.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to close the related civil action, 22-CV-6418 CJS.

So Ordered.

Dated: Rochester, New York
       November 17, 2025

ENTER:

CHARLES J. SIRAGUSA
United States District Judge